574 S.E.2d 803

**Lincoln BEATTY, Plaintiff Below, Appellant,**

v.

**FORD MOTOR COMPANY, a Delaware corporation, Defendant Below, Appellee**

No. 30622.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 13, 2002.

Decided Dec. 5, 2002.

Dissenting Opinion of Justice McGRAW Dec. 11, 2002.

LaVerne Sweeney, Esq., Grafton, for the Appellant.

Michael Bonasso, Esq., William J. Hanna, Esq., Robert P. Lorea, Esq., Flaherty, Sensabaugh & Bonasso, P.L.L.C., Charleston, for the Appellee.

**PER CURIAM.**

In this appeal from the Circuit Court of Monongalia County, we are asked to review an order granting summary judgment to a defendant in a products liability action. As set forth below, we affirm the circuit court's order.

**I.**

On June 9, 1998, appellant and plaintiff below Lincoln L. Beatty was operating a 1996 van manufactured by the appellee and defendant below, Ford Motor Company ("Ford"). While driving the van on an interstate highway, the appellant lost control. The van veered off to the right, struck a guardrail, then crossed the highway and struck a guardrail on the left side of the highway. The van apparently went airborne and landed on top of the left guardrail, and slid some distance. The van ultimately came to rest on top of the guardrail, with three wheels suspended in the air. The appellant asserts that he was injured in the collision.

The appellant stated that he was driving the van at approximately 40 miles per hour when he heard a "metal to metal" noise, and then immediately lost control of the ability to steer the van. He contends that the steering

wheel spun through a 3/4 turn, and that the van did not "fishtail" on the highway but turned straight into the guardrail.

The appellant exited the van and discovered that the "drag link," a mechanism which controls the steering of the vehicle, was severely damaged. He contends that the drag link broke due to some inherent manufacturing or design defect by appellee Ford.

Appellee Ford, however, contends that other factors were involved in the appellant's collision. The police accident report reflects that, at the time of the accident, it was raining and the roadway was wet. The police officer who investigated the accident concluded it was caused by the appellant's failure to maintain control of his vehicle and "slippery pavement." Two experts later employed by Ford concluded that the drag link was broken as a result of the impact forces during the accident, and was not a cause of the accident, and also concluded that the appellant's description of the accident and the supposed vehicle movements was inconsistent with the drag link malfunctioning.

The appellant filed the instant action asserting, *inter alia*, claims of strict products liability and negligence under the theory of *res ipsa loquitur*. During the course of discovery, the appellant proffered himself as an expert, and relying on his training and experience as a mechanic, indicated that "the drag link that connects the pittman arm broke and it should not have done such." The appellant indicated that he had never known of this problem to happen on another vehicle. The appellant proffered no other evidence regarding the drag link.

Ford subsequently filed a motion for summary judgment, asserting that the appellant did not point to evidence that would circumstantially prove the elements of either a strict products liability claim or a negligence claim. In an order dated September 26, 2001, the circuit court granted the motion, and concluded after a meticulous discussion of the law and evidence of record that there were no genuine issues of material fact.

The appellant now appeals the circuit court's summary judgment order.

## II.

We review a circuit court's order granting summary judgment *de novo*. Syllabus Point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

In reviewing summary judgment, this Court will apply the same test that the circuit court should have used initially, and must determine whether "it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963). As with the circuit court, we "must draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion," that is, the appellant. *Painter v. Peavy*, 192 W.Va. at 192, 451 S.E.2d at 758.

The appellant argues that the circuit court erred in granting summary judgment because questions of fact exist regarding whether, under strict products liability theory, the Ford van was not reasonably safe for its intended use—and therefore, whether the van was defective. Alternatively, the appellant argues that a broken drag link is an event which ordinarily does not occur in the absence of negligence—and therefore, under the evidentiary rule of *res ipsa loquitur*, the appellant asserts the issue of whether Ford was negligent is one for the jury to consider.

We adopted a cause of action for strict products liability in *Morningstar v. Black and Decker Mfg. Co.*, 162 W.Va. 857, 253 S.E.2d 666 (1979). We held in Syllabus Point 3 of *Morningstar* that the cause of action is "designed to relieve the plaintiff from proving that the manufacturer was negligent in some particular fashion during the manufacturing process and to permit proof of the defective condition of the product as the principal basis of liability." The general test of whether a product is defective was established in Syllabus Point 4, where we held:

In this jurisdiction the general test for establishing strict liability in tort is whether the involved product is defective in the sense that it is not reasonably safe for its

intended use. The standard of reasonable safeness is determined not by the particular manufacturer, but by what a reasonably prudent manufacturer's standards should have been at the time the product was made.

▮ A plaintiff is not required to establish a strict products liability cause of action by identifying the specific defect that caused the loss, but instead may do so by circumstantial evidence. We have held that a fact finder may infer a breach of the standard of reasonable safeness where it is shown that an accident simply would not have occurred unless the product was defective. A plaintiff must, however, show three things in order to make a *prima facie* case of strict products liability through the use of circumstantial evidence. We stated in Syllabus Point 3 of *Anderson v. Chrysler Corp.,* 184 W.Va. 641, 403 S.E.2d 189 (1991):

> Circumstantial evidence may be sufficient to make a *prima facie* case in a strict liability action, even though the precise nature of the defect cannot be identified, so long as the evidence shows that a malfunction in the product occurred that would not ordinarily happen in the absence of a defect. Moreover, the plaintiff must show there was neither abnormal use of the product nor a reasonable secondary cause for the malfunction.

We therefore must consider whether the appellant in the instant case showed that the drag link would not ordinarily have broken in the absence of a defect; showed that there was no abnormal use of the product; and showed that there was no reasonable secondary cause for the malfunction.

After examining the record, we conclude that the appellant in the instant case failed to demonstrate that the broken drag link would not ordinarily happen in the absence of a defect. Aside from the appellant's assertion that, in his years as a mechanic, he had never seen a broken drag link, there is nothing to exclude the reasonable possibility

that the broken drag link happened as a result of some other cause—such as fracturing in the collision. While there is no evidence to show that the van was being used abnormally at the time of the collision, there is also no evidence to show the vehicle was used properly during its lifetime.[1] Lastly, the appellant failed to exclude from consideration other reasonable secondary causes for the appellant's loss of control of the van, such as the possibility that the appellant lost control due to a rain-soaked roadway and that the drag link was broken in the subsequent impacts with the guardrails.

The appellant had the burden of proffering the circumstantial evidence that is required by *Anderson v. Chrysler Corp* and thereby "demonstrating that a legitimate jury question, i.e. a genuine issue of material fact, [was] present." Syllabus Point 1, *Jividen v. Law,* 194 W.Va. 705, 461 S.E.2d 451 (1995). We believe the circuit court correctly found that the appellant did not identify sufficient circumstantial evidence to establish a *prima facie* case of strict products liability.

▮ The appellant alternatively contends that he proffered sufficient circumstantial evidence to prove that appellee Ford was negligent. The appellant asserts, under the evidentiary rule of *res ipsa loquitur,* that a jury could infer from the record that Ford was negligent because drag links just do not break in the absence of negligence, and he asserts that all other possible causes of the accident, including the conduct of the plaintiff and third parties, are eliminated by the evidence.

The appellee, however, contends that the evidence could not lead to a reasonable inference of negligent conduct on the part of the appellee, but would only lead to mere speculation by a jury as to any negligent conduct by the appellee.

▮ Under the rule of *res ipsa loquitur,* we have held that "in the absence of evidence to the contrary, in *res ipsa loquitur* cases,

---

1. The record indicated that the van was two years old and, because of its use in the delivery business, had more than 110,000 miles on it when the accident occurred. Furthermore, the van was owned by the appellant's employer and

the appellant had only driven the vehicle for several days prior to the accident. Accordingly, the van's prior history of use, damage, maintenance or repairs was unknown.

the mere fact that a damage-causing event occurs ... suffices for liability...." *Peneschi v. National Steel Corp.*, 170 W.Va. 511, 517, 295 S.E.2d 1, 7 (1982). "[W]hen the essentials of [the doctrine of *res ipsa loquitur* ] are present, evidence of negligence is supplied." *Royal Furniture Co. v. City of Morgantown*, 164 W.Va. 400, 405–406, 263 S.E.2d 878, 882 (1980). It is, however, "clearly an incorrect statement of the law" to say that *res ipsa loquitur* "dispense[s] with the requirement that negligence must be proved by him who alleges it." *Peneschi*, 170 W.Va. at 520, 295 S.E.2d at 10.

In *Foster v. City of Keyser*, 202 W.Va. 1, 501 S.E.2d 165 (1997), we set forth the following standard in Syllabus Point 4 for the application of the rule of *res ipsa loquitur*:

> Pursuant to the evidentiary rule of *res ipsa loquitur*, it may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when (a) the event is of a kind which ordinarily does not occur in the absence of negligence; (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

In applying this rule, we stated that:

> It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn. It is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may reasonably be reached.

*Foster*, 202 W.Va. at 21, 501 S.E.2d at 185. In other words, the test set forth in *Foster* allows a trial court to make a preliminary determination that the evidence that a plaintiff intends to present is indeed circumstantial evidence that will lead to reasonable inferences by the jury, and is not simply evidence which would force the jury to speculate in order to reach its conclusion.

In applying the *Foster* test to the evidence in the case at bar, it is apparent that the appellant failed to meet the first two elements of the test. First, there is a substantial possibility that the rain-soaked highway and/or the appellant's carelessness in operating the van may have been, at the very least, a contributing factor to the accident. Accordingly, the appellant has not shown that the accident was of a kind that ordinarily would not have occurred in the absence of the appellee's negligence.

Second, other responsible causes, including the conduct of the appellant and third persons, was not sufficiently eliminated by the evidence. The record shows it was not clear how the van had been operated or maintained over the many miles that the van had accumulated, suggesting that the conduct of unknown third persons could have caused the accident. The appellant therefore failed to satisfy this element as well.[2]

We therefore find that the circuit court correctly held that the appellant failed to show a genuine question of material fact regarding whether the appellee was negligent through the application of *res ipsa loquitur*. The appellant's evidence could not lead to a reasonable inference that the appellee was negligent, and any such conclusion by a jury would be based on mere speculation.

### III.

Accordingly, the circuit court's September 26, 2001 order granting summary judgment to the appellee is affirmed.

Affirmed.

Justice McGRAW dissents and reserves the right to file a dissenting opinion.

McGRAW, Justice, dissenting.

This is a case where I believe that the lower court should have followed our standard for summary judgment, which would have allowed Mr. Beatty to present his case to a jury. "A motion for summary judgment

---

**2.** We note, however, that third element of the *Foster* test was met by the appellant, because the indicated negligence was within the scope of Ford's duty to the plaintiff. Ford manufactured a part critical to the safe operation of the van, and any design or manufacture of the part in a careless fashion would breach the duty of due care owed to the driver of the van.

should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of N.Y.*, 148 W.Va. 160, 133 S.E.2d 770 (1963). Furthermore, this Court has often made clear that courts considering motions for summary judgment "must draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion." *Painter v. Peavy*, 192 W.Va. 189, 192, 451 S.E.2d 755, 758.

The dispute in this case is fact specific. Either the part in question was defective and the cause of the accident, or it was not. I believe that the plaintiff has presented suffi-

cient evidence to survive a motion for summary judgment if one considers the facts in the light most favorable to him. Though Mr. Beatty might have a difficult time convincing a jury by presenting only his own testimony as an expert to counter the enormous legal and scientific resources of one of the world's largest companies, I believe that he should be given the opportunity to make his case.

Therefore, I respectfully dissent.